JOHNSON, Judge.
This case presents only questions of fact. Plaintiff was constructing, as owner, twenty-seven homes in Highway Park Subdivision in Kenner, Jefferson Parish, Louisiana. Plaintiff contracted with defendant to install the plumbing in these homes. After the plumbing was thought ito have been completed in house No. 9, the floors were sanded and waxed and the house was in readiness for FHA inspection when someone opened the water cutoff valve at the house, presumably to drink from an outside faucet, on June 23, 1959. Plaintiff’s petition alleges that defendant failed to complete the plumbing work in this particular house and the whole house became flooded by water from an uncapped pipe under a bathroom toilet; causing floor damage in the sum of $827.00, which plaintiff seeks to recover from defendant. Defendant’s answer admits that he performed plumbing work for plaintiff, but denies all other allegations of the petition. After trial of the case in the First City Court of New Orleans, there was judgment for defendant, dismissing the plaintiff's suit, and plaintiff has appealed.
There is considerable testimony in the record about the methods and procedures *900 employed generally in the construction of all of the houses, hut very little of it relates specifically to house No. 9, with which we are here concerned. Mr. Sitzman personally had not been to the project within a week or two and therefore he has no firsthand knowledge of what happened on June 23, 1959, or within a week or two leading up to that date. He does say definitely that in the early stages of roughing-in the plumbing he caused the house water pipes to be connected with the main water supply line in order that the pipes in the house may be tested; that this connection was left on so that in event othet workmen accidently drove a nail in the copper piping in the house it would be detected; that in addition to the water main connection he installed what we understand to be a cutoff valve and faucet .at the carport near the house, which was easily accessible to anyone; that when an inside fixture was set in place it should have been properly connected with the water pipe without delay, and if there is to be any delay for any reason in making such connection after the fixture is set in place, the water pipe at that fixture should be capped, so that in event the cutoff valve near the house is open no water would escape in the house. While Mr. Sitzman does not say so in explicit language, it is clearly the duty of the plumbing contractor to guard against the contingency of water getting out of the pipes in the house until he has finally completed the installations and connections.
Louis Neal was plaintiff's general superintendent. He testified that on the morning of June 23 he had one colored workman cleaning up the pavement outside of house No. 9 as a final clean-up preparatory for the FHA inspection scheduled for the next day; that there were no other workmen at the house on that day; that the plumbers had not worked there within a week or two and that they were understood to have completed their plumbing installations in that house; that the plumbers had not been in that house since before June 18, as evidenced by an invoice for sanding and waxing the floors of that date; that the plumbers on June 23 were working in another house two blocks away from house No. 9; that after the plumbers were supposed to have finished in house No. 9, as in any other house, the sanding and waxing of the floors always followed the completion of the plumbing installations, and in this house the plumbing work was completed before June 18; that the inside of the house was ready for final inspection to be made on June 24; that on the afternoon of June 23, about 2:00 o’clock, as he returned from lunch, he observed that water was running out of the house at the kitchen door and he found the whole house flooded by water from a pipe under the toilet in the bathroom. Neal notified the defendant of the trouble and defendant “got on his men about it,” and told them to check all of the houses. Defendant then put his son in charge of the plumbing work and the son stayed on the job personally from that time until the project was completed.
Vance Lemoine, the assistant superintendent, gave testimony substantially the same as that of Mr. Neal.
David A. Kraus, President of plaintiff corporation, said that when he spoke to defendant about this water situation in house No. 9, Mr. Sitzman “was furious with his men at that time for causing the damage, because it’s not customary to leave any open pipes while water is connected to the house.” Mr. Kraus said that Mr. Sitzman agreed to take care of the damage in this house and asked Mr. Kraus to give him the old flooring which was damaged by the water, which Mr. Kraus agreed to do. The old flooring was left in a pile in the carport for several days for defendant, but when defendant did not pick it up the plaintiff hauled it away as trash. (Mr. Sitzman denied agreeing to pay for the damage but admitted that he asked Mr. Kraus for the old flooring and said the reason he did not get it was that he didn’t have any use for it.) We believe *901 that Mr. Sitzman agreed to assume the loss and his request to be given the old flooring is indicative of that fact.
Mr. Sitzman testified as a witness on his own behalf that he connected the house waterline with the main water supply when they roughed-in the plumbing and left it connected. He said that when they set fixtures in place the water was turned off and the caps removed from the pipes in order to connect the pipes to the fixtures. He acknowledged that the water which flooded the house came from the pipe under the toilet fixture because the fixture was not connected properly to the pipe, and said that the pipe should have been connected at the time the fixture was set in place. He said further that if there is any delay in making a permanent connection to a fixture the pipe should be capped to prevent the escape of water until it is connected. We find that the failure on the part of defendant’s employees to connect the pipe at the time the fixture was set in place, or to recap the pipe going to that fixture, the connection not having been made, constituted gross negligence which was the proximate cause of the flooding and the resulting damage to plaintiff’s property. No one knows who actually opened the cutoff at the carport and it does not make any difference who did it. The testimony is to the effect that a child could have done it. The primary fault lies with defendant’s workmen in setting the fixture without connecting or capping the pipe and leaving the premises as completed and ready for inspection. Why the workmen left the pipe unconnected and uncapped goes without explanation. It is certain that they set the fixture in place and left the pipe disconnected and uncapped. We can only spec-, ulate that they left the house. and forgot about it. They had not been to that house for a period of from one to two weeks. This defective situation could not be detected by simple inspection. The open pipe was hidden by the fixture. The defendant is clearly responsible.
Mr. Kraus itemized the damage, giving the amount of each item, making a total of $827.35. There was no attempt on the part of the defendant to dispute any of the items or the respective amounts. Plaintiff’s claim by this suit is only $827.00 and the award will be limited to that amount.
The judgment appealed from is reversed and it is ordered, adjudged and decreed that there be judgment in favor of the plaintiff and against the defendant in the sum of $827.00, with legal interest thereon from August 27, 1957, until paid and for all costs in both courts.
Reversed.